**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| JENNY STEPP, Individually, and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § | |
| V. | § | |
| | § | A-16-CV-1251-RP |
| SETON FAMILY OF HOSPITALS, et al., | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Plaintiff's Opposed Motion to Conditionally Certify Collective Action and Authorize Notice (Dkt. #27), Plaintiff's Motion to Strike Defendant's Sur-Reply (Dkt. #35), and all related briefing.  Having considered the motions, responsive briefing, all pleadings, oral arguments, and the applicable law, the court grants the motion to strike and recommends the motion to conditionally certify class be denied.

### I.   BACKGROUND

Jenny Stepp, a nurse at a Seton hospital, brings this Fair Labor Standards Act ("FLSA") suit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all other similarly situated.  Dkt. #1 (Complaint).  Stepp alleges that non-exempt, direct care nurses at Seton Healthcare Hospitals ("Seton") are required to clock in and out at the beginning and end of their shifts and Seton automatically deducts 30 minutes for a meal break during their shifts. Compl. at ¶¶ 25, 27.  Stepp further alleges that nurses are regularly interrupted during their meal breaks and are expected to remain on duty during their meal breaks, even though they are not paid for such time.  *Id*. at ¶ 29.  This deducted time sometimes results in nurses working more

than 40 hours a week but not being paid an overtime rate for time worked over 40 hours a week.

*Id*. at ¶¶64-77.  Stepp brings claims under the FLSA for such overtime pay.[1]  *Id*.

> Stepp now moves the court to conditionally certify her proposed plaintiff class as:
>
> All current and former hourly-paid nurses employed at Seton Highland Lakes Hospital, Seton Medical Center Austin, Seton Medical Center Hays, Seton Medical Center Williamson, Seton Northwest Hospital, Seton Shoal Creek Hospital, Seton Smithville Regional Hospital, Seton Southwest Hospital, University Medical Center Brackenridge (now Dell Seton Medical Center at the University of Texas, Dell Children's Medical Center at Central Texas, and Seton Edgar B. Davis Hospital locations at any time during [INSERT DATE] to the present, who were subject to an automatic deduction of their meal break times and worked more than 40 hours during at least one week (including unpaid meal breaks).

Dkt. #32-1 at 1.

Seton opposes conditional certification.  Seton argues that nurses have several methods of cancelling the automatic meal deduction if they worked during the meal break, and thus the automatic deductions do not violate the FLSA.  Stepp argues that it is premature to address the merits of the case at the conditional certification stage.

Seton also opposes the broad definition of Stepp's proposed class and argues that her experience of working in one department at one Seton hospital during the time period that Seton implemented the automatic meal deductions gives her an insufficient ability to represent the proposed class.  Seton argues that meal breaks are handled differently in different hospitals and units.  For instance, some units may use a buddy system where one nurse covers another's patients so the second nurse can take a meal break or units may take other steps to ensure meal breaks.  Stepp again argues it is premature to address these issues because they should be addressed at the later decertification stage.

---

[1] Stepp also asserts Rule 23 state law class claims in her Complaint, but in this motion she only seeks to conditionally certify an FLSA class.

## II.   APPLICABLE LAW

The FLSA permits a court to order an action to proceed as a collective action on behalf of others similarly situated. The statute provides:

> An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Thus, unlike a class action filed under Federal Rule of Civil Procedure 23(c), a collective action under § 216(b) provides for a procedure to "opt-in," rather than "opt-out." *Roussell v. Brinker Int'l, Inc.*, 441 Fed. App'x 222, 225 (5th Cir. 2011) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)).

The threshold issue to certifying a collective action under the FLSA is whether the plaintiff can show the existence of a class whose members are "similarly situated." The Fifth Circuit recognizes two approaches to making this determination. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995) (overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)); *Roussell*, 441 Fed. App'x at 226. The first is a two-step conditional certification process known as the *Lusardi* approach, after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). The second is a Rule 23-style analysis known as the *Shushan* approach, after *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990). Although the Fifth Circuit has declined to specifically adopt either test, both the Fifth Circuit and the Supreme Court have made statements implying that a Rule 23–type analysis is incompatible with FLSA collective actions. *See Genesis Healthcare Corp., v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *Donovan v. Univ. of Tex.*, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a

congressionally developed alternative to the F. R. Civ. P. 23 procedures."). Moreover, the majority of courts within this circuit have adopted the Lusardi two-stage approach. *See, e.g., Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 719 (S.D. Tex. 2014); *Mateos v. Select Energy Servs., LLC*, 977 F. Supp. 2d 640, 643 (W.D. Tex. 2013); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011); *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011). The referring District Judge has previously assessed conditional certification under *Lusardi*, and the undersigned will use that standard here. *See Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 512–13 (W.D. Tex. 2015) (Pitman, J.).

Under *Lusardi*, the court approaches the 'similarly situated' inquiry via a two-step analysis, consisting of a "notice" and a "decertification" stage:

> First, the court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class. If they are, notice is sent and new plaintiffs are permitted to "opt in" to the lawsuit. Second, after discovery is largely complete and more information on the case is available, the court makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action.

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (internal citations omitted).  The determination at the notice stage is "usually based only on the pleadings and any affidavits which have been submitted." *Mooney*, 54 F.3d at 1214. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id*. District courts in Texas frequently apply a three element test, requiring a plaintiff to show that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *See, e.g., Abeldano v. HMG Park Manor of Westchase, LLC*, 2016 WL 5848890 at *6 (S.D. Tex. Oct. 6, 2016) (collecting cases). "'The

remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively.'" *Tolentino v. C & J Spec–Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (quoting *Albanil v. Coast 2 Coast, Inc.*, 2008 WL 4937565 at *3 (S.D. Tex. Nov. 17, 2008)). The decision of whether to conditionally certify the class and facilitate notice of potential class members based on the plaintiff's pleadings and evidence is "soundly within the discretion of the district court." *Mateos*, 977 F. Supp. 2d at 644 (citing *Hoffman–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

"The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Mooney*, 54 F3.d at 1214. "At this stage, courts are much less likely to allow the collective action to continue to trial." *Portillo v. Permanent Workers, LLC*, 662 Fed. App'x 277, 281 (5th Cir. 2016) (citing *Mooney*, 54 F.3d at 1214). If the court finds the opt-in plaintiffs are not similarly situated, those plaintiffs are dismissed without prejudice and only the named plaintiffs proceed to trial. *Mooney*, 54 F.3d at 1214.

## III.   ANALYSIS

### A.   Standard for Conditional Certification

Stepp and Seton disagree on the standard this court should apply to determine whether Stepp has met her burden to show conditional certification is warranted.  Stepp argues a lenient standard should apply because little discovery has taken place.  Seton contends Stepp has not shown conditional certification is warranted even under a lenient burden, but argues a heavier burden should apply because this case has been ongoing for over a year, some discovery has been exchanged, and some depositions have occurred.

The court notes that while some discovery has occurred, Stepp, unlike Seton, has not had access to a list of nurses who may fall within the proposed class. Seton has provided the court with the declarations of over 60 nurses that state the approximate monthly frequency in which their meal breaks are interrupted and whether they usually or always cancel the meal break deduction when that occurs. *See* Dkt. #29-1 at App. 007-134. While the court does not challenge the integrity of these declarations, the court also recognizes that other prospective class members may have answered the declaration questions differently, but Stepp did not have access to those potential class members. Accordingly, the court will apply a lenient standard.

However, a lenient standard still requires some evidence on the conditional certification criteria. Although the standard at the conditional certification stage is lenient, "'most courts require some factual support' for allegations presented in the complaint, either in the form of multiple affidavits with some factual basis or other supporting evidence." *McCloud v. McClinton Energy Grp., L.L.C.*, 2015 WL 737024 at *4 (W.D. Tex. Feb. 20, 2015) (quoting *Aguirre v. SBC Commc'ns, Inc.*, 2006 WL 964554 at *6 (S.D. Tex. Apr. 11, 2006)). However, "most courts that have addressed the issue agree that affidavits submitted at the notice stage of class certification need not be in a form admissible at trial." *Id.*; *see Abeldano*, 2016 WL 5848890 at * 7; *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 760-61 (N.D. Tex. 2013) (collecting cases); *Contreras v. Land Restoration LLC*, 2017 WL 663560, at *4 (W.D. Tex. Feb. 17, 2017) (Pitman, J.).

### B.  Conditional Certification Criteria

Although the inquiries into whether other aggrieved individuals exist, whether those individuals are similarly situated to the plaintiff, and whether those individuals want to opt in to the lawsuit are separate, similar issues pervade all three inquiries. Accordingly, the court will

summarize the issues related to each element, and then consider whether conditional certification is warranted.

1.    <u>Reasonable basis that aggrieved individuals exist</u>

Stepp alleges the automatic meal deductions violate the FLSA because the meal periods are not bona fide meal periods since nurses are not fully relieved of their duties and instead are expected to be subject to interruptions during their meal breaks. *See* 29 C.F.R. § 785.19(a). Stepp contends this expectation that nurses are subject to interruption is demonstrated by nurses' ethical responsibilities, the Nursing Practices Act, and Seton's "Humancare Promise," which sets the standard for Seton employees' behavior, including being responsive to patient needs and respectful to one another. Stepp argues the nurses' ability to cancel the meal break is insufficient because Seton policy states the meal break deduction should be cancelled if the nurse "legitimately worked" during the break. Stepp contends direct-care nurses are always subject to interruptions during the meal breaks, even if they are not actually interrupted, and therefore *all* meal breaks should be compensable time because the nurses are not fully relieved of their duties.

Seton argues automatic meal break deductions are not per se FLSA violations and cites district court cases outside the Fifth Circuit holding such. Seton also relies on *Bernard v. IBP, Inc.*, 154 F.3d 259, 264-65 (5th Cir. 1998), in which the Fifth Circuit held the "critical question is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee." Seton argues the meal breaks are primarily for the employee's benefit and presented evidence through its Chief Nursing Officer ("CNO") that, with the exception of emergency situations, Seton recognizes the importance of nurses taking true meal breaks. Seton also argues the extent to which nurses are fully relieved of their duties during break varies by hospital and department and that Stepp is twisting Seton's Humancare Promise to

serve her purpose.  Seton also contends it implemented the automatic meal break time deduction in response to nurses' complaints about having to clock in and out for meal breaks.  Stepp counters that it is premature to address the merits of her alleged FLSA violation at this stage of the case.

### 2.    Similarly situated

Seton argues Stepp's proposed class is overly broad and she is not similarly situated to potential class members.  Seton contends that because Stepp worked at one hospital in one department during the relevant time period, she is not similarly situated to other potential class members whose departments may have handled meal breaks differently and frequency of interruptions and cancelling the meal deduction varies by department.  Seton also contends that because Stepp had a supervisory role she should not be a lead plaintiff for a class of employees that she supervised.  Stepp argues these issues should not defeat conditional certification and can be addressed at the decertification stage.

### 3.    Desire to opt in

Although this suit has been ongoing, Stepp has identified no other potential class members that have come forward to join the suit as plaintiffs.[2]  Seton argues this should defeat class certification.  Stepp contends some courts, including the referring District Court in other cases, have held this element is not a requirement to conditional certification since response to the notice will make clear the extent of interest in the suit.  Stepp relies on her declaration that other direct-care nurses would be interested in joining the suit and her attorney's declaration that other nurses have joined similar suits.  Stepp also points out that Seton's CNO approximated

---

[2] Stepp has identified one or two other nurses who have come forward as potential co-plaintiffs, but it is undisputed that they do not satisfy the class definition.

there were 400-500 automatic meal deduction cancellations in one pay period across all eleven Seton hospitals.[3] Dkt. #27-2 (VanDyke Dep.) at 29:18-21, 162:19-25.[4]

4.    Analysis

While the evidence establishes that some meal breaks are interrupted, the evidence is also clear that Seton has a policy that provides for cancelling the deduction of interrupted meal breaks.  Dkt. #27-3 (Announcement) at 34 o4 45.  However, Stepp's suit is not about actually-interrupted meal breaks.[5]  Stepp's theory of the case is that all meal breaks are compensable time because Seton's policies, such as its Humancare Promise, require direct-care nurses to make themselves subject to interruption during their meal breaks.  The court has doubts about this premise.[6]  Stepp's evidence that all meals are subject to interruption is her own declaration stating her meal breaks were frequently interrupted, Seton's Humancare Promise policy and nursing ethics, and Seton's Rule 30(b)(6) testimony concerning interruptions. Stepp's interpretation of Seton's Humancare Promise is clearly rejected by Seton itself and, at this early stage of the case, appears to take the policy out of context. VanDyke Dep. at 144:6-145:5, 146:16-17, 149:12-16.  At various depositions, Seton representatives testified that Seton intends the meal break to be an uninterrupted 30 minute period of time.  VanDyke Dep. at 19:14-18,

---

[3] VanDyke further testified that she estimates Seton employs about 3,500 hourly, non-exempt nurses.  VanDyke Dep. 139:1-11.

[4] The VanDyke deposition excerpts are available at Dkt. #27-2, #29-1, #32-1.

[5] There is no allegation that an interrupted meal breaks where the automatic deduction was cancelled violates the FLSA.  Rather, at most, they provide some evidence that meal breaks are subject to interruptions.

[6] Seton's CNO testified that in one pay period approximately 400-500 meal break deductions were cancelled. VanDyke Dep. at 29:18-21, 162:19-25.  She also testified that Seton employs approximately 3,500 hourly, non-exempt nurses, and evidence demonstrates that pay periods are two weeks long. VanDyke Dep. 139:1-11; Dkt. #27-3 (Timekeeping Policy defining "Pay Period") at 38 of 45.  Conservatively estimating that each nurse works two shifts a week, that results in 400-500 cancelled meal deductions over 14,000 shifts, for a rate of less than 4%.

144:6-145:5, 149:12-16; Dkt. #27-2 (Ourston Dep.) at 34:9-11, 47:4-11; Dkt. #27-12 (Crawford Dep.) at 17:21-24.

However, Stepp is correct that it is premature to determine whether the meal breaks are for Seton's benefit of for the nurses' benefit. *See IBP*, 154 F.3d at 264-65 (setting standard for compensable meal breaks). Nonetheless, the court does have significant concerns that this ultimate determination will vary depending on the Seton facility and department at issue. During the time that automatic meal break deductions were in place, Stepp worked in one department at one hospital. She relies on her own declaration concerning her previous experience at other Seton facilities to support her allegation that all direct-care nurses are subject to interruption in all departments at all hospitals. Stepp's evidence is not sufficient for such a broad claim. No other potential plaintiff from any other department or facility has come forward to support Stepp's claim that aggrieved individuals exist outside of Stepp's department. Seton's 30(b)(6) testimony also does not support such a broad claim. While Seton representatives testified that interruptions do occur, they also testified that meal breaks are intended to be uninterrupted and the procedures taken to enable uninterrupted meals breaks vary by facility and unit. Dkt. #29-1 (VanDyke Declaration) at ¶ 4; VanDyke Dep. at 19:14-18, 110:1-17, 115:18-21, 144:6-145:5, 149:12-16; Ourston Dep. at 34:9-11, 47:4-11; Crawford Dep. at 17:21-24.

Moreover, Stepp has presented no evidence, nor any serious allegation, that nurses are discouraged from cancelling the deduction of any meal break or that nurses are expected to take their meal breaks in areas where they can easily be found should a need arise. Notably, a Seton representative was asked about reprimands for cancelled meal breaks, but Stepp did not submit the witness's response to the court.[7]   Ourston Dep. at 35:24-25. Further, Seton presented

---

[7] In contrast, Seton submitted its CNO's testimony that she "can't imagine" repercussions for cancelling the automatic meal deduction. VanDyke Dep. at 66:18-21.

evidence that the automatic meal break deduction policy was implemented in response to nurse complaints.  Dkt. #27-3 (Announcement) at 34 of 45; Ourston Dep. at 26:16-20; VanDyke Dep at 48:9-49:4.

Accordingly, Stepp's evidence is not sufficient to support her claim that aggrieved individuals exist outside of her department.  Finally, the court is very troubled that no other members of the plaintiff class have joined this suit or even filed an affidavit in support of the suit.  Additionally, since the automatic meal deductions were implemented, Stepp has only worked in one department at one Seton hospital.  Thus, her ability to speak for nurses in other departments or hospitals is questionable.

However, unlike other cases that have gone before this District Court where multiple potential plaintiffs joined the suit or submitted affidavit, Stepp has only submitted her own declaration concerning the environment at Seton and her attorney's affidavit about his experience in other cases.  *See Contreras*, 2017 WL 663560 at *4; *Dyson*, 308 F.R.D. at 511.  In light of these concerns, the failure of Stepp to procure any other member of the prospective class to file an affidavit or join the suit is quite troubling, especially given her long work history at Seton and her alleged ability to represent the class.

## C.    Conclusion

Although the standard is lenient, Stepp has not produced sufficient evidence to show conditional certification is warranted in this case.  *See McCloud*, 2015 WL 737024 at *4 ("'[M]ost courts require some factual support' for allegations presented in the complaint, either in the form of *multiple affidavits* with some factual basis or other supporting evidence.") (emphasis added); *Mateos*, 977 F. Supp. 2d at 644 (conditional certification decision is "soundly

within the discretion of the district court").   The court will recommend that conditional certification be denied.

## IV.   MOTION TO STRIKE

Stepp moves to strike Seton's sur-reply to the underlying motion (Dkt. #34).   The sur-reply is a short defense against Stepp's claim that she is entitled to a lenient standard of proof because Seton had withheld some discovery.   Stepp moves to strike the sur-reply because Seton did not seek leave before filing the brief.   Seton responds to the motion and seeks belated leave.

The court grants the motion to strike and denies leave to file the brief.   Seton did not seek leave prior to filing the brief and is unnecessary to the court's analysis.

## V.   RECOMMENDATION AND ORDERS

For the reasons stated above, the court **RECOMMENDS** Plaintiff's Opposed Motion to Conditionally Certify Collective Action and Authorize Notice (Dkt. #27) be **DENIED**.   The court further **ORDERS** Plaintiff's Motion to Strike Defendant's Sur-Reply (Dkt. #35) be **GRANTED** and Dkt. #35 be **STRICKEN**.

## VI.   OBJECTIONS

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.   The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party

from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED April 17, 2018.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE